IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **ANDRONICUS BERNARD LINZY,** )<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**ALABAMA DEPARTMENT OF PUBLIC** )<br>**HEALTH, and DEPARTMENT OF** )<br>**HEALTH AND HUMAN SERVICES'** )<br>**CENTERS FOR DISEASE CONTROL** )<br>**AND PREVENTION** )<br>**Defendants.** ) | CASE NO. 2:19-CV-153-MHT-SRW<br><br>JURY TRIAL REQUESTED<br><br><br>March 1, 2019 |

## COMPLAINT

**COMES NOW** the Plaintiff, Andronicus Bernard Linzy (hereinafter Plaintiff or Mr. Linzy), by and through undersigned counsel of record, and hereby complains against the above-named Defendants, as set forth herein below.

### I. JURISDICTION AND VENUE

1. Mr. Linzy files this Complaint, institutes these proceedings, and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §§ 1331 and 1334 (a)(4), as an action arising under the Act of Congress known as the *Americans With Disabilities Act* as Amended (ADA, ADAAA), 42 U.S.C., §12101 *et. seq.*), the *Rehabilitation Act of 1973* (29 U.S.C. §701, *et. seq.*) and the Title VII, 42 U.S.C. §2000 *et. seq.*, as amended by the *1991 Civil Rights Act*, and 42 U.S.C. §1981a, to obtain equitable relief, the costs of suit, including reasonable attorneys' fees, and damages suffered by the Plaintiff, due to the Defendant's unlawful discrimination and retaliation against him.

2. Mr. Linzy first notified Defendant Alabama Department of Public Health (hereinafter "Defendant ADPH" or "ADPH") of his claims of disability discrimination on or about July 14, 2017. He then filed a complaint of disability discrimination with the EEOC in Birmingham on or about November 17, 2017. On July 3, 2018, Mr. Linzy filed another complaint with the EEOC, in which he claimed disability and race discrimination and retaliation.

3. On December 3, 2018, the undersigned attorney received a Notice of Rights from the EEOC on Mr. Linzy's first filing, allowing him to pursue his complaint in Court within 90 days of the receipt of said Notice. (See Exhibit A) On February 8, 2019, he learned that his second discrimination claim was closed out, and that a Notice or Rights had rendered. (See Exhibit B)

4. Mr. Linzy also raised claims of disability discrimination and retaliation against Defendant Department of Health and Human Services' (HHS) Centers for Disease Control and Prevention (hereinafter "Defendant CDC" or "CDC"), on or about July 12, 2017. The CDC conducted an informal and formal investigation, and then, on July 26, 2018, it issued a Report of Investigation, which gave Mr. Linzy a Right to Request a Hearing with an EEOC Administrative Judge. Mr. Linzy filed his Request for an EEOC Hearing on August 13, 2018. To date, Mr. Linzy has not received a hearing and has elected to file his lawsuit against the CDC, under 29 C.F.R. §1614.107(a)(3), as his case has been pending well beyond 180 days.

5. Venue is proper in the Middle District of Alabama, Northern Division, since the alleged discriminatory actions of the Defendant ADPH occurred in Montgomery County, Alabama. Venue is also proper as to the CDC, as the discriminatory and

retaliatory actions of the CDC against Mr. Linzy occurred in Montgomery County, Alabama.

## II. PARTIES

6. Mr. Linzy is a citizen of the United States and a resident of Wakulla County, Florida and he is over the age of nineteen years.

7. The Defendant, ADPH is a state agency located in Montgomery County, Alabama.

8. The Defendant, CDC is a federal government agency located in Atlanta, Georgia.

## III. STATEMENT OF FACTS

9. Mr. Linzy is an African-American male and has been an employee of Defendant CDC for seventeen (17) years. His current position is Public Health Advisor, GS-12 in Dauphin County, PA. Before moving to his current position, Mr. Linzy worked for the CDC and was assigned to Defendant ADPH as a Public Health Advisor under the 'Terms of Assignment' between the State of Alabama and Defendant CDC.

10. In his previous position, he served as a Technical Advisor with the Alabama Department of Public Health. He began his assignment in Alabama in December of 2010 as a Public Health Advisor, GS-12. He worked there until he was wrongfully reassigned to Harrisburg, Pennsylvania on February 12, 2018.

11. Mr. Linzy suffers from a diagnosed condition of chronic arthritis of both knees and both ankles. The CDC has been aware of this condition since 2002.

12. From November of 2011 until January of 2016, Mr. Linzy was allowed to work a compressed ten-hour-day, four-day week. On December 15, 2015, he was

formally told he could no longer work this compressed schedule and would have to return to an eight-hour, five-day work week. The new schedule went into effect the first pay period in January of 2016.

13. In December of 2015, Mr. Linzy first requested accommodations, both verbally and in writing, to be allowed to work the same compressed schedule he was previously working. He requested a condensed, four days per week (10 hour per day), schedule because of difficulty traveling during a five-day per week schedule. This accommodation would enable him to attend weekly medical and physical therapy appointments near his home in Florida.

14. Because he lived in Crawfordsville, Florida, this accommodation limited the amount of driving Mr. Linzy had to do. The accommodation also allowed Mr. Linzy to perform the essential functions of his position, since he would be receiving needed medical treatment and therapy. Therefore, this accommodation would allow him to perform the essential functions of his position as a Public Health Advisor.

15. Mr. Linzy made a request for accommodations on May 2, 2017, for a compressed schedule and to telework. The CDC evaluated his case and, in May of 2017, acknowledged that Mr. Linzy is a qualified individual with a disability.

16. However, on or about July 5, 2017, Defendant ADPH decided it would not accommodate Mr. Linzy. He was not given a legitimate reason that it could not provide his requested accommodation. Further, ADPH told Mr. Linzy that state employees were not allowed to work an alternate work schedule. ADPH also told Mr. Linzy that he would not be able to access ADPH's computer systems from a remote location. Neither of these reasons are true.

17. Mr. Linzy's request was denied and he was told, by Mr. Merriweather, his supervisor, that Alabama did not allow compressed work schedules because they would disrupt field operations. Complainant stated he was told any further requests would need to be submitted through his Agency (CDC).

18. Mr. Linzy continued to request accommodations, to be allowed to work a compressed schedule. During this period, his wife, who lives in Crawfordville, Florida, also became ill and he needed to be able to see about her more often.

19. Even though Mr. Linzy has a known disability, and needed time to see about his wife, Defendant CDC refused to allow him to have the requested accommodation, without ever a showing that said accommodation would place an undue burden on Defendant CDC.

20. He has made numerous reasonable accommodation requests. The first was in December of 2015, followed by January 2016, April 2016, October 2016, January 2017, March 2017, May 2017 and October 2017. His first formal accommodation request was made in April of 2017.

21. After Mr. Linzy made numerous requests for accommodations, the ADPH instructed Mr. Linzy to stop making such requests and just accept the decision that he was not going to be accommodated.

22. The reasons given to Mr. Linzy, for ADPH's refusal to accommodate him for his disability, were false according to ADPH practice and according ADPH policy.

23. Mr. Linzy was never informed that the requested accommodation presented an undue burden on Defendant ADPH.

24. Defendant ADPH's employees, in the same or similar positions, who were not disabled, were allowed to work from alternate work sites. ADPH claims that it allows employees to work from home for "business reasons."

25. Also, a Caucasian ADPH employee, who was in the same or similar position, was allowed to work from an alternate site, whereas Mr. Linzy, who is African-American, was not.

26. ADPH employees, in the same or similar positions, who were Caucasian and were not disabled, were allowed to work compressed schedules, whereas Mr. Linzy, who is African-American, was not. ADPH claims that it allows employees to work compressed schedules for "business reasons."

27. Further, Caucasian ADPH employees, who were in the same or similar positions, were allowed to work compressed schedules. ADPH claims that it allows employees to work compressed schedules for "business reasons."

28. Mr. Linzy made initial contact with an EEO Counselor with Defendant CDC on or about June 12, 2017.

29. Mr. Linzy complained of discrimination due to his race and his disability to Defendant ADPH's EEO officer on or about November of 2017.

30. When Defendant ADPH did not resolve the discrimination claim, Mr. Linzy filed his complaint with the EEOC on July 3, 2018.

31. Defendant ADPH did not offer any alternative accommodation. They merely rejected Mr. Linzy's request, stating it there had to be a business reason, even after he repeatedly informed ADPH that he was making the request under the ADA.

32. When he would not give up seeking accommodations, on December 19, 2017, Mr. Linzy was told that his behavior was being disruptive and it asked the Defendant CDC to reassign him.

33. On December 19, 2017, not long after Mr. Linzy filed his first EEOC claim against the ADPH, he learned that he was going to be reassigned to Harrisburg, Pennsylvania, over 1000 miles from his home, on February 12, 2018.

34. Mr. Linzy asserts that the requested reassignment, at the request of the ADPH, was in retaliation for his initial EEOC complaint against Defendant ADPH. He filed his second EEOC complaint against Defendant ADPH on July 3, 2018, in which he claimed race and disability discrimination, as well as retaliation against him for filing EEOC complaint in November of 2017.

35. Mr. Linzy received a Notice of Rights in his first EEOC Complaint on December 3, 2018.

36. This Complaint is timely filed on March 1, 2019.

## COUNT I
### DISABILITY DISCRIMINATION AGAINST DEFENDANT ADPH
### In Violation of the ADA, ADAAA and Rehabilitation Act

37. Mr. Linzy repeats, re-alleges, and incorporates by reference paragraphs 1 through 36 above, the same as if more fully set forth herein and further avers as follows:

38. Mr. Linzy requested to be accommodated, by being allowed to work a compressed schedule—four ten-hour days. He had been allowed to work such a schedule from November of 2011 to January of 2016. However, without justification, ADPH suddenly stopped this accommodation.

39. When Mr. Linzy requested a return to this accommodation, Defendant ADPH denied Mr. Linzy's request, to work a compressed schedule.

40. Defendant failed to accommodate Mr. Linzy's disability by willfully, and/or maliciously, denying him a reasonable accommodation, due to his physical handicap as described above.

41. Defendant ADPH claimed that it could not accommodate Mr. Linzy because it did not allow employees to work alternate work schedules and that he would not be able to access the computer system from a remote work site. Both of these reasons provided by Defendant ADPH were false and not in accordance with ADPH regulations and policies.

42. Defendant ADPH never claimed that Mr. Linzy's requests for accommodation were unreasonable or that they would cause an undue burden on the Defendant. In fact, ADPH allowed other non-disabled employees to work from alternate locations, for "business reasons."

43. Mr. Linzy avers that Defendant ADPH's discrimination against him is due to his disability, in violation of the Americans with Disabilities Act, as Amended 42 U.S.C. § 12101, *et seq.*, prohibiting disability discrimination.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Mr. Linzy respectfully prays that this Court grant the following relief:

a) Judgment declaring that Defendant ADPH failed to accommodate Mr. Linzy for his disability.

b) Judgment declaring that Mr. Linzy suffered disability discrimination

8

by the Defendant and its agents;

c) An award of back pay, leave, leave without pay losses and other benefits to which Mr. Linzy is entitled, from the date he was first denied accommodation until the date of this Court's judgment in his case;

d) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

e) An award of compensatory damages for mental anguish, to which Mr. Linzy may be entitled; and

f) Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT II
### DISABILITY DISCRIMINATION by DEFENDANT CDC
### In Violation of the ADA, ADAA and Rehabilitation Act

44. Mr. Linzy repeats, re-alleges and incorporates by reference paragraphs 1-43 above, the same as if more fully set forth herein, and further avers as follows:

45. The Defendant CDC was aware of Mr. Linzy's disability. It was also aware that he requested accommodations for his disability.

46. As noted above, Mr. Linzy made numerous requests for accommodations to Defendant ADPH and, after he was instructed to do so, made such requests to his supervisor at Defendant CDC, namely Francis Rucker-Banister.

47. Ms. Bannister denied his request to work a compressed schedule. She denied the request based on information given to her by the Complainant's ADPH supervisor, Mr. Merriweather, who told her compressed work schedules were against Alabama policy. Rather than verifying the policy, Ms. Bannister rejected the request.

48. Ms. Rucker-Bannister also noted that Mr. Linzy requested to telecommute—work from a remote site. She again relied on Mr. Merriweather of ADPH in denying this request. She claimed Mr. Merriweather told her telecommuting was not allowed in Alabama, because it could violate patient confidentiality. Again, without verifying the policy, Ms. Bannister rejected Mr. Linzy's request to telecommute.

49. Rather than attempting to accommodate Mr. Linzy's requests, or insisting that ADPH accommodate his requests, the CDC, without any proof that the accommodations would place an undue burden on Defendant CDC or Defendant ADPH, merely refused to accommodate Linzy.

50. Then, when ADPH complained that Mr. Linzy was continually requesting accommodations, Defendant CDC merely transferred him out of his ADPH position, to a location in Pennsylvania, over 1,000 miles from his home.

51. The actions taken against Mr. Linzy, refusing to ensure that he was accommodated in his position with Defendant ADPH and transferring him when he sought accommodations and then complained of discrimination, were discriminatory against him due to his disability.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Mr. Linzy respectfully prays that this Court grant the following relief:

a) Judgment declaring that Defendant CDC discriminated against Mr. Linzy due to his disability.

b) Judgment declaring that Mr. Linzy suffered disability discrimination by the Defendant CDC and its agents;

c) An award of back pay, leave, leave without pay and other benefits to which Mr. Linzy is entitled, from the date he was first denied accommodation until the date of this Court's judgment in his case;

d) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

e) An award of compensatory damages for mental anguish, to which Mr. Linzy may be entitled; and

f) Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT III
### RACE DISCRIMINATION AGAINST ADPH
### In Violation of Title VII, 42 U.S.C. 2000 *et. seq.*

52. Mr. Linzy repeats, re-alleges and incorporates by reference paragraphs 1-51 above, the same as if more fully set forth herein, and further avers as follows:

53. ADPH did not allow Mr. Linzy, who is African-American, to work a compressed schedule, even when he asked for this as an accommodation under the ADA.

54. ADPH allowed Caucasian employees to work from alternate sites, for "business reasons."

55. ADPH did not allow Mr. Linzy, who is African-American, to telework, even when he asked for this as an accommodation under the ADA.

56. Mr. Linzy's ADPH co-worker, who is Caucasian is allowed to work from an alternate site. That co-worker actually supervises other employees, whereas Mr. Linzy does not.

11

57. ADPH has claimed that it cannot allow Mr. Linzy to work a compressed schedule or to telework. This is not true as other employees are allowed to do so for "business reasons."

58. ADPH's stated reasons for refusing to accommodate Mr. Linzy, when ADPH allows Caucasian employees to work from remote locations was merely a pretext to cover up its race discrimination against Mr. Linzy.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Mr. Linzy respectfully prays that this Court grant the following relief:

a) Judgment declaring that Defendant ADPH discriminated against Mr. Linzy due to his race;

b) Judgment declaring that Mr. Linzy suffered race discrimination by the Defendant and its agents;

c) An award of back pay, leave, leave without pay and other benefits to which Mr. Linzy is entitled, from the date he was first denied accommodation for his disability, until the date of this Court's judgment in his case;

d) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

e) An award of compensatory damages for mental anguish, to which Mr. Linzy may be entitled; and

f) Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT IV
## RETALIATION DISCRIMINATION AGAINST DEFENDANT APDH

59.     Mr. Linzy repeats, re-alleges and incorporates by reference paragraphs 1-58 above, the same as if more fully set forth herein, and further avers as follows:

60.     Mr. Linzy made numerous requests for accommodations. Defendant ADPH did not provide Mr. Linzy with proof that the accommodations would cause an undue burden to the Department.

61.     Even though Defendant did not show that Mr. Linzy's request was an undue burden, it instructed him not to continue to request accommodations.

62.     Mr. Linzy continued to request accommodations nonetheless. The accommodations requested were reasonable and the same as always: a compressed schedule (4 – 10-hour days) and/or work from an alternate site (Dothan, Alabama).

63.     On or about November 17, 2017, he filed a complaint with the EEOC, in which he complained about the ADPH's refusal to accommodate him for his disability.

64.     On December 19, 2017, ADPH told Mr. Linzy that his behavior was disruptive and that they were asking that he be reassigned.

65.     January 4, 2018, management failed to hold the Alabama Department of Public Health's local jurisdiction accountable to the signed Terms of Assignment Agreement and refused to offer any type of accommodations to comply with Mr. Linzy's Reasonable Accommodation (RA).   The notification on January 4th was made by Francis Rucker-Bannister.

66.     Mr. Linzy was notified of his transfer on February 12, 2018, and notification was made by acting Branch Chief, Melinda Salmon.

67. Mr. Linzy ended up being reassigned to Pennsylvania, approximately 1,000 miles from his home.

68. Mr. Linzy was also given a reprimand on April 16, 2018 for issues that occurred in June and October of 2017.

69. Mr. Linzy complained of retaliation to the EEOC on May 22, 2018 as part of his EEOC Charge 420-2018-01457.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Mr. Linzy respectfully prays that this Court grant the following relief:

a) Judgment declaring that Defendant ADPH retaliated against Mr. Linzy after he requested accommodations and/or complained of race and disability discrimination;

b) An award of back pay, leave, leave without pay and other benefits to which Mr. Linzy is entitled, from the date he was first denied accommodation until the date of this Court's judgment in his case;

c) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

d) An award of compensatory damages for mental anguish, to which Mr. Linzy may be entitled; and

e) Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT V
## RETALIATION DISCRIMINATION AGAINST DEFENDANT CDC

70. Mr. Linzy repeats, re-alleges and incorporates by reference paragraphs 1-69 above, the same as if more fully set forth herein, and further avers as follows:

71. On June 12, 2017, Mr. Linzy made initial contact with the CDC's EEO office.

72. He filed his formal EEO Complaint with Defendant CDC on October 19, 2017.

73. On or about November 17, 2017, he filed a complaint against Defendant ADPH with the EEOC, in which he complained about the ADPH's refusal to accommodate him for his disability.

74. The Agency acknowledged receipt of Mr. Linzy's formal EEO Complaint on November 28, 2017.

75. On January 4, 2018, management failed to hold the Alabama Department of Public Health's local jurisdiction accountable to the signed Terms of Assignment Agreement and refused to offer any type of accommodations to comply with Mr. Linzy's Reasonable Accommodation request.

76. In a meeting with Ms Bannister on or about January 4, 2018 Mr. Linzy asked if she or management had reviewed the state's policy(ies) regarding RA and alternate work schedules. Ms Rucker-Bannister replied. "no." When Mr. Linzy asked why she had not looked into the policy, she did not even answer him.

77. On February 12, 2018, CDC management, namely Melinda Salmon and Janice Norwood, told Mr. Linzy that he was being reassigned to another state and refused Mr. Linzy's request that Defendant CDC review the Alabama Department of

15

Public Health's RA policy on compressed work schedules, in support of his reasonable Accommodation request.

78.  On February 12, 2018, Mr. Linzy amended his EEO complaint to CDC, to include a claim of retaliation.

**WHEREFORE, PREMISES CONSIDERED,** Mr. Linzy respectfully prays that this Court grant the following relief:

  a) Judgment declaring that Defendant CDC retaliated against Mr. Linzy after he requested accommodations and/or complained of race and disability discrimination.

  b) An award of back pay, leave, leave without pay and other benefits to which Mr. Linzy is entitled, from the date he was first denied accommodation until the date of this Court's judgment in his case;

  c) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

  d) An award of compensatory damages for mental anguish, to which Mr. Linzy may be entitled; and

  e) Such further, other and different relief as the Court may deem appropriate and necessary.

Respectfully submitted this 1st day of March, 2019.

Andronicus Bernard Linzy, Plaintiff

BY:

_____
Joseph Guillot (ASB-4581-O35J)
Counsel for the Plaintiff

16

OF COUNSEL:
**MCPHILLIPS SHINBAUM, L.L.P.**
516 South Perry Street
Montgomery, Alabama 36104
(334) 262-1911
(334) 263-2321  FAX
joeglaw5@gmail.com

## JURY DEMAND

Plaintiff hereby requests trial by jury on all issues so triable.

_____
OF COUNSEL

I have reviewed the forgoing and confirm that it is true and accurate to the best of my knowledge and understanding.

_____
Andronicus B. Linzy, Plaintiff